UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| TINA COLAPIETRO | : | |
| | : | |
| v. | : | CIV. NO. 3:08CV238 (WWE) |
| | : | |
| DEPARTMENT OF MOTOR VEHICLES | : | |
| STATE OF CONNECTICUT and | : | |
| TIMOTHY KULISH | : | |

RECOMMENDED RULING ON MOTION TO ENFORCE SETTLEMENT AGREEMENT

Pending is a Motion to Enforce Settlement Agreement filed by plaintiff Tina Colapietro and defendant State of Connecticut Department of Motor Vehicles ("DMV"). Defendant Timothy Kulish argues that the parties did not reach a settlement on March 23, 2011. Rather, "[t]here was a tentative settlement of all outstanding issues as to the parties" and "[t]he settlement was not put into writing at that time." [Doc. #106]. Mr. Kulish appeared pro se at oral argument on June 30, 2011 .[1] [Doc. #116]. After careful consideration, the Motion to Enforce Settlement Agreement **[Doc. #101]** is **GRANTED**.

BACKGROUND

Plaintiff brought this action against her employer, the Connecticut Department of Motor Vehicles, and her former supervisor, Timothy Kulish, alleging she was subjected to a

---

[1]The Court granted Attorney Richard Franchi's Motion to Withdraw as counsel to defendant Kulish on June 27, 2011. [Doc. ##112, 113, 114].

1

sexually hostile work environment, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 and claiming intentional infliction of emotional distress.

Settlement Negotiations

On March 23, 2011, a settlement conference was held before the undersigned. [Doc. #32]. At the settlement conference, the parties reached an agreement on the material terms of a settlement of this action, subject to final approval by the Attorney General. The State agreed to pay the settlement amount of $96,500 to plaintiff in return for the following consideration: Ms. Colapietro's agreement to dismiss the case and sign a Release of Liability and Discharge of all claims for the State of Connecticut, the Department of Motor Vehicles, along with its current and former employees, and for Timothy Kulish. For the State's agreement to pay the full settlement amount, defendant Kulish agreed to fully release from all liability Ms. Colapietro, the State of Connecticut and the Department of Motor Vehicles, including its current and former employees [for all claims flowing from this case or the settlement thereof]. On March 23, 2011, the Court reported the case settled "subject to the approval by the Litigation Management Committee." [Doc. #94]. On May 5, 2011, the Court entered an Order administratively closing the case, stating that the "parties have reported that this action has been settled in full." [Doc. #95].

Counsel for the parties memorialized their agreement in a draft settlement agreement. [Doc. #115-1]. The terms set forth in this draft are consistent with the terms agreed upon at the March 23, 2011 settlement conference. The draft agreement provides, in pertinent part, that,

1. The plaintiff, through her counsel, shall immediately sign and return to defendants' counsel a Stipulation of Dismissal (an unexecuted copy of which is attached hereto as "Exhibit A" and, in doing so, consent to a voluntary dismissal of this lawsuit, with prejudice, pursuant to Rule 41(a)(l)(ii), Federal Rules of Civil Procedure. Counsel for DMV will hold the Stipulation of Dismissal in escrow and file it with the Court at the time that the payment referred to in paragraph 2 below is complete. The plaintiff shall also immediately sign and return the Release of Liability (unexecuted copy of which is attached hereto as "Exhibit B")

2. The State of Connecticut agrees to pay the plaintiff a total of Ninety Six Thousand, Five Hundred Dollars ($96,500) by way of two checks . . . . .

3. It is agreed and understood that the plaintiff shall not use this Agreement against the defendants in any pending or future legal proceedings, except as may be necessary to enforce this Agreement, and that the evidence underlying the claims will not be used to establish any liability for future claims of any type.

. . . .

9. The Defendant Kulish shall also immediately sign and return a Release of Liability releasing the state and all of its agencies, officers and employees from liability as stated in "Exhibit C" attached hereto.

[Sett. Agreement, Doc. #115-1].

The Release of Liability and Discharge states

1. (a) The defendant, Timothy Kulish on behalf of himself, his heirs, executors, administrators, successors and assigns, for and in consideration of the plaintiff's moving the Court for an order of dismissal in Civil Case No.: 3:08CV238(WWE) and other valuable consideration, hereby completely releases and forever discharges the State of Connecticut and the Department of Motor Vehicles, including all current, former employees in their personal and official capacities from all liability, claims, demands, obligations, causes of action, lawsuits, administrative proceedings, rights, damages, costs, fees, expenses, and compensation of any nature whatsoever, known or unknown that defendant may have, including but not limited to any alleged violations of federal and state constitutional provisions, or any other alleged violation of any local, state or federal law, regulation, or ordinance, and/or public policy, contract, tort and/or any other common law cause of action, or other theory of recovery, on any matter from the beginning of time to and including the effective date of this agreement. Said release includes discharge of any claim for indemnity or attorney fees arising from the complaint as amended and all related pleadings and discovery in Civil Case No. 3:08cv238(WWE), United States District Court, District of Connecticut.

2. (b) <u>Unknown Claims</u>. Defendant Kulish represents that he understands that he is releasing claims that he may not know about, and that he intends to release such claims. THIS MEANS THAT, BY SIGNING THIS AGREEMENT, DEFENDANT KULISH WAIVES <u>ANY</u> RIGHT HE NOW HAVE (sic) OR EVER HAD TO BRING OR MAINTAIN A LAWSUIT OR MAKE <u>ANY AND ALL</u> LEGAL CLAIMS WHATSOEVER, AGAINST THE PLAINTIFF, INVOLVING ANY MATTER ARISING OUT OF ANY KNOWN OR UNKNOWN ACT OR OMISSION OCCURRING BEFORE THE DATE OF THE EXECUTION OF THIS AGREEMENT.

[Sett. Agreement Ex. C (emphasis in original)].[2]

---

[2] <u>Plaintiff's Release of Liability</u> states:

1. (a) The plaintiff, Tina Colapietro, on behalf of herself, her heirs, executors, administrators, successors and assigns, for and in consideration of the payment of the sum of $96,500.00 . . . and other valuable consideration, hereby completely releases and forever discharges defendants Department of Motor Vehicles, Timothy Kulish in both his official and individual capacities, the State of Connecticut, including all former or present employees, officers, elected officials, representative, assigns, attorneys, insurers and agents (collectively "Releases"), in both their official and individual capacities, from all liability whatsoever. Said release and discharge against all the defendants and the State of Connecticut from all liability, as described above, includes all claims, demands, obligations, causes of action, lawsuits administrative proceedings, rights, damages, costs, fees, expenses and compensation of any nature whatsoever, known or unknown, that plaintiff may have, including but not limited to any alleged violations of federal and state constitutional provisions, Title VII of the Civil Rights Act of 1964, Sections 1981 through 1983 and 1985 of Title 42 of the United States Code, the Civil Rights Act of 1991, the Employee Retirement Income Security Act of 1974, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Fair Labor Standards Act, the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§46a-69, 46a-70, 46a-71 and 46a-99, the State Personnel Act, the State Workers' Compensation Act, the State Employees Retirement Act, State and Federal Wage laws, or any alleged violations of applicable collective bargaining provisions, including but not limited to the State Employees

5

On April 21, 2011, the Assistant Attorney General forwarded the draft Settlement Agreement and Release of Liability to plaintiff's counsel and to counsel for defendant Kulish. The Agreement and Release were signed by plaintiff and returned to the Assistant Attorney General by e-mail and by regular mail that same day. [Kaplan Aff. ¶8].

From April 21 through the week of May 16, 2011, counsel for

---

> Bargaining Agent Coalition, or any other alleged violation of any local, state or federal law, regulation, or ordinance, and/or public policy, contract, tort and/or any other common law cause of action, or other theory of recovery, on any matter from the beginning of time to and including the effective date of this Agreement, including those matters which have been raise or could have been raise in any way, growing out of any incidents which are the subject of the complaint as amended and all related pleadings and discovery in Civil Case No. 3:08CV238(WWE), United States District Court, District of Connecticut.
>
> 2. (b) <u>Unknown Claims</u>. Plaintiff represents that she understands that she is releasing claims that she may not know about, and that she intends to release such claims. THIS MEANS THAT, BY SIGNING THIS AGREEMENT, PLAINTIFF WAIVES <u>ANY</u> RIGHT SHE NOW HAS OR EVER HAD TO BRING OR MAINTAIN A LAWSUIT OR MAKE <u>ANY AND ALL</u> LEGAL CLAIMS WHATSOEVER, AGAINST THE RELEASES, INVOLVING ANY MATTER ARISING OUT OF ANY KNOWN OR UNKNOWN ACT OR OMISSION OCCURRING BEFORE THE DATE OF THE EXECUTION OF THIS AGREEMENT.

plaintiff and the Assistant Attorney General contacted Attorney Franchi, counsel for Kulish, and were told that he and his client "had not been able to connect" and that the settlement documents would be executed and returned the following week. Attorney Franchi expressed no problem or concern over any aspect of the settlement agreement, or the documents themselves. [Kaplan Aff. ¶¶10-12]. During a second conversation during the week of May 16, 2011, Attorney Franchi advised plaintiff's counsel that defendant Kulish had now "changed his mind" and did not want to execute the settlement agreement, despite his counsel's urging. [Kaplan Aff. ¶12]. "At no time did Attorney Franchi indicate to [plaintiff's counsel] any particular issue or problem that his client had with either the settlement agreement or the terms of the settlement documents." [Kaplan Aff. ¶12].

On May 23, 2011, plaintiff's counsel informed the Court that "Mr. Kulish's counsel, Attorney Franchi, advised [him] last week that Mr. Kulish had 'changed his mind' and does not want to execute the settlement agreement, despite counsel's advice that he do so. Please note that Mr. Kulish is not being asked to contribute any money to the settlement, which is being funded entirely by the State." [Pl. Let. 5/23/11 at 1]. A conference call was held on June 6, 2011, after which the Court directed counsel for the plaintiff and DMV to file a motion to enforce the settlement agreement. [Doc. #101].

Defendant Kulish contends that the parties reached a "tentative settlement" of the issues on March 23, 2011, and that after review of the proposed "written document he claims that the agreement was not as originally accepted and now claims that there was no meeting of the minds upon which an agreement was made." [Doc. #106]. He refuses to sign the agreement.

Attorney Franchi filed a notice of withdrawal as counsel of record for defendant Kulish on June 23, 2011, pursuant to D. Conn. L. Civ. R. 83.13(a), after being notified by opposing counsel that he would be called as a witness at the hearing on the motion to enforce settlement agreement. The motions to withdraw [Doc. ##107, 112] were granted on June 27, 2011. [Doc. ##113, 114].

STANDARD

"A settlement agreement is a contract that is interpreted according to general principles of contract law." Powell v. Omnicom, BBCO/PHD, 497 F.3d 124 (2d Cir. 2007)(citing Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005)); Brandt v. MIT Development Corp., 552 F. Supp. 2d 304, 319 (D. Conn. 2008). "A contract is binding if the parties have mutually assented to the terms, and where the terms of the agreement are 'clear and unambiguous'." Brandt, 432 F.3d at 443 (citing Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc., 225 Conn. 804, 811 (1993)) (internal citations omitted)).

8

"Generally, a trial court has the inherent power to enforce summarily a settlement agreement as a matter of law only when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement. As a result, the court's authority in such a circumstance is limited to enforcing the undisputed terms of the settlement agreement that are clearly and unambiguously before it, and the court has no discretion to impose terms that conflict with the agreement." Nanni v. Dino Corp., No. 29340, 2009 WL 2871363, at *2 (Conn. App. Sept. 15, 2009) (internal quotation marks and citations omitted).

Where a settlement agreement has not been signed, Connecticut courts determine whether there has been mutual assent using a three-part test. Omega, 432 F.3d at 443. "The parties' intent is determined from the (1) language used, (2) circumstances surrounding the transaction, including the motives of the parties, and (3) purposes which they sought to accomplish." Id. (citing Klein v. Chatfield, 166 Conn. 76, 80 (1974))). "'The intention of the parties manifested by their words and acts is essential to determin[ing]' whether the parties entered into a settlement agreement." Brandt, 552 F. Supp. 2d at 319 (quoting Hess v. Dumouchel Paper Co., 154 Conn. 343, 347 (1966)).

9

DISCUSSION

The facts of this case satisfy all three of the Omega factors for determining whether there was mutual assent to an enforceable settlement. With regard to the first factor, the terms set forth in the settlement agreement, along with this Court's records of the settlement conference, confirm that the parties settled the case, with the state agreeing to pay $96,500 to plaintiff in return for (1) plaintiff's agreement to release the State of Connecticut, the Department of Motor Vehicles, along with its current and former employees, and Timothy Kulish from liability for all claims; and (2) defendant Kulish's agreement to fully release the State of Connecticut and the Department of Motor Vehicles, including its current and former employees, from liability for all claims flowing from this case or the settlement thereof.

Defendant's position-that the terms of the settlement were "tentative"- is not supported by this Court's review of the proceedings or the agreement reached at the settlement conference on March 23, 2011. The language in the draft settlement agreement circulated to defendant Kulish accurately reflects the agreement by Kulish and his counsel to provide a release to the State of Connecticut and Department of Motor Vehicles in exchange for which the State of Connecticut would fund the settlement and not seek any contribution from Kulish. "A trial court has the

10

inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." Audubon Parking Assoc. LP, 225 Conn. 804, 811. These terms were clear and unambiguous were set forth at the conference and were accurately reflected in the settlement agreement.

The second factor is the circumstances surrounding the parties' settlement, including the motives of the parties. As set forth above, in exchange for avoiding trial and the State's agreement to fund the settlement and obtain a release for Kulish from plaintiff, Kulish agreed to provide a release to the State of Connecticut and Department of Motor Vehicles. Avoiding the uncertainty of trial motivates almost every party who negotiates a settlement. See Brandt v. MIT Development Corp., 552 F. Supp. 2d 304 (D. Conn. 2008) (citing EEOC v. Beauty Enter. Inc., 2007 WL 3231692, at *8 (D. Conn. 2007)). At oral argument, Kulish stated that he objected to providing a release, but could articulate no justification for his objection; he did not identify any claim he wanted to bring against the State or the DMV arising out of the facts of this case which would be precluded by this release. Indeed, Kulish's employment was terminated with the DMV in 2008 after, among other things, an investigation of his computer hard drive which led to the discovery of thousands of inappropriate images, including images

of Colapietro. As part of his employment termination agreement, Kulish executed a release to the State of Connecticut and DMV whereby he agreed not to seek employment with the State and gave up any claims arising out of his employment. Kulish was represented by Attorney Franchi, his counsel here, in settling the employment termination action.

Nevertheless, Kulish maintains that there was no settlement here until an agreement was signed and states that he does not recall being told by the Court or his lawyer that, in order for the State to pay plaintiff, he would be required to sign a release of any claims against plaintiff and the State of Connecticut. The Court does not find credible Kulish's suggestion that Attorney Franchi failed to convey the material terms of the agreement, and, specifically, that in return for his signed releases, Kulish would not have to admit liability, he would not have to pay any money to plaintiff, and he would be released from this lawsuit. "Parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation." Powell, 497 F.3d at 128. "The settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing." Id. Kulish does not claim that Attorney Franchi acted without

authority to negotiate a settlement on his behalf.[3] "[A]n attorney with apparent authority may enter into a settlement agreement that is binding on the client." Ackerman v. Sobol Family Partnership, LLP, 298 Conn. 495, 510 (2010) (citing 1 Restatement (Third), Agency §3.03, cmnt (b), p. 176 (2006)). Finally, Kulish has identified no prejudice arising from signing the release and he has articulated no basis for a lawsuit against the State of Connecticut based on the facts arising from this lawsuit or the termination of his employment.[4] As such, the circumstances surrounding the settlement agreement support the parties' mutual assent and the fact that the settlement agreement was not signed by Kulish is insufficient to render the settlement non-binding.

As for the third factor, the terms agreed upon accomplished the objectives of both plaintiff and defendants. The settlement and judgment would give plaintiff finality and avoid the expense and uncertainty inherent in a jury trial. Defendant Kulish would obtain finality and an agreement from plaintiff that she would

---

[3] At oral argument, the Court asked Kulish if he was claiming that neither Attorney Franchi or the Court advised Kulish that he would have to sign a release with the State and plaintiff. Kulish responded, "not specifically." Kulish stated he did not recall that this term was discussed with him.

[4] At oral argument, Kulish stated that any claims he would bring would be based on the past. The Court asked Kulish what that might be and he responded that he didn't know and he had nothing planned.

release the DMV and Kulish from litigation. "When parties agree to settle a case, they are effectively contracting for the right to avoid a trial." Audubon Parking Assoc. LP, 225 Conn. 804, 812 (emphasis in original). Here, Kulish did not have to admit liability and did not have to pay for any portion of the settlement. Both parties had good reason to settle this case in light of its long history, defendant Kulish's financial situation, and the cost and uncertainty of trial.

CONCLUSION

This Court finds that plaintiff and defendants Department of Motor Vehicles and Timothy Kulish entered into an enforceable agreement that is not voidable by defendant Kulish. Therefore, the Motion to Enforce Settlement Agreement **[Doc. #101]** is **GRANTED**, based on the terms set forth in the draft Settlement Agreement.

Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of the receipt of this order. Failure to object within fourteen (14) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam);

F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

ENTERED at Bridgeport this 3rd day of August 2011.

/s/
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE